[No. 3557.]

### SI JONES *v.* THE STATE.

1. ASSAULT WITH INTENT TO RAPE — INDICTMENT.— An assault with intent to rape a woman is any attempt to have carnal knowledge of a woman, without her consent, by force, threats or fraud. It is constituted by the use of any threatening gesture, showing in itself, or by words accompanying it, an immediate intention, coupled with an ability, to have carnal knowledge of the woman without her consent, by force, threats or fraud. See the opinion *in extenso* for an indictment *held* sufficient to charge an assault with intent to commit rape by force, and note also the suggestions of this court in connection with the same.

2. SAME — FACT CASE.— See the statement of the case for evidence *held* insufficient to support a conviction for assault with intent to rape, inasmuch as it fails to show the intent with which the assault was made, and proves no more than an aggravated assault and battery.

APPEAL from the District Court of Grimes. Tried below before the Hon. Benton Randolph.

The conviction in this case was for an assault with intent to rape, committed upon the person of Agnes Podraza, on the 10th day of August, 1884. A term of two years in the penitentiary was the penalty imposed by the verdict. The appellant was shown to be a negro, and the assaulted female a Pole.

Green Moore and John Jackson, colored, testified, for the State, that between 8 and 9 o'clock on Monday, August 11, 1884, they saw the defendant in Green Moore's field, about two and a half miles south of Anderson. After some conversation with the witnesses the defendant left, going in the direction of the lane. About the time that the defendant left the witnesses they saw a woman coming down the lane from Green Moore's gin house, and going in an easterly direction. A short time after this the prosecutrix came up to the house of Green Moore, and spoke to his wife. She could not speak English, but endeavored to ask directions to Anderson, and left, going in that direction.

Henry Henson testified, for the State, that he was pulling fodder at a point about three hundred yards distant from Green Moore's house on the morning of August 11, 1884. The defendant passed the witness at that point on the morning of that day, stopped but a moment, and said that he was on his way from Navasota. Witness observed nothing unusual in his demeanor.

Ellen Henson testified, for the State, that, on the morning of the alleged outrage, the defendant passed her house, a few hundred

yards distant from the house of Green Moore, apparently in a great hurry. He stopped long enough to get a drink of water, and went on in the direction of town. No one save the witness and her children were at the house at the time. This was between 8 and 9 o'clock, and after the witness had cleared off the breakfast table and arranged her house.

Tom Albert testified, for the State, that, between 8 and 10 o'clock on the morning of the alleged outrage, he met the defendant in the road between Green Moore's field and Mrs. Stone's place, going towards the latter place, which was towards town from Moore's. Defendant lived on Mrs. Stone's place.

Agnes Podraza, through an interpreter, testified, for the State, that she left Mrs. Foster's place, near Navasota, to go to the house of her father-in-law, near Anderson, on the morning of August 11, 1884. When she passed Terrell's mill, about three miles from Navasota, she noticed the defendant there at work. Witness had known the defendant for two years at Mrs. Stone's. After she had passed Terrell's mill she looked back, and at some distance saw the defendant coming on in her wake. When witness had reached a point within a mile of Green Moore's field she heard footsteps behind her. Looking back she discovered the defendant, who then and there caught her by the heels, seized her with one hand by the throat, and threw her to the ground. She screamed out, and he seized her throat with both hands, choking her violently, and placed his knee on her breast. Witness thought she would die from the effects of the choking. Defendant, after witness had screamed out, and he had choked her, jumped up and ran off, he going one way and witness another. Defendant made no attempt to raise the witness's clothes, or to do else to her than to throw her down and choke her. Witness saw no one at the immediate place and time of the assault. Witness's fright confused her as to directions and locality, and she went into Green Moore's field, where Green's wife was, to ask her way. Witness proceeded to town, and made complaint against the defendant.

John Boggess, for the State, testified that he arrested the defendant at Mrs. Stone's cow pen between sunset and dark on the evening of August 11, 1884. It was about two miles from Becker's mill, across the country, to the point where the offense was alleged to have been committed. A creek ran down in the direction of Green Moore's, through his field, below Becker's mill. Two persons traveling from Navasota to Anderson, the one by Becker's mill and the other by Moore's field, would separate on a hill near Terrell's mill,

and the party turning to the right, to go by Moore's field, could see a person behind for a long distance. The place of the alleged assault was some six or seven miles from Terrell's mills. The road by Moore's goes by the lumber mill, and not to Anderson. The prosecutrix reported the assault as having been committed about half a mile from Green Moore's field, which was shown to be about two and a half miles south of Anderson. Becker's mill was about three quarters of a mile southwest from Anderson. The road on which the defense witnesses McLewis and Gray Mooring claim to have seen the defendant, on the morning of the alleged assault, did not lead from the direction of the place of the alleged assault, but from the direction of Ike Pratt's.

James Jeter, Gray Mooring and Joe McLewis were witnesses for the defense who testified that, at about 8 o'clock on the morning of the alleged assault, they saw the defendant at Becker's mill. Jeter, according to his testimony, left his home in Anderson, on foot, about ten minutes past 6, and went to McLewis's, about four hundred yards beyond Becker's mill. He remained, as well as he could estimate, about an hour and a half at McLewis's and went back to the mill, where he saw the defendant on the platform, handling cotton, and spoke to him. Defendant was still there when, a half hour later, the witness left, going back to McLewis's. About an hour and a half or two hours later, witness again left McLewis's, and it was then fifteen minutes past 10 o'clock. The witnesses Jeter, Mooring and McLewis testified that when they saw the defendant on the morning in question, they saw several children, including those of Mooring and McLewis, going to school, and that the children usually went to school about 8 o'clock. Defendant told some of the party that he spent the night previous at Ike Pratt's.

Ike Pratt testified, for the defense, that defendant was at his house on the night before the alleged assault, until prayer meeting closed, about midnight, when he went home with the widow Wade.

Richard Williams, colored, testified, for the defense, that he saw the defendant in the town of Anderson about 11 o'clock on the morning of the alleged assault.

Tom Terrill, manager of Mrs. Stone's place where the defendant lived, testified that defendant got home about 10 o'clock on the morning of the alleged assault. Witness had known the defendant for four years, and always as an humble, respectful negro, never disposed to "fudge" on the rights of the white people.

The motion for new trial raised the question discussed in the opinion.

*McDaniel & Dodd*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

HURT, JUDGE. Conviction in this case is for an assault with intent to rape. The charging part of the indictment is as follows: That Si Jones "did unlawfully and feloniously, with force and arms, make an assault upon Agnes Podraza, she, the said Agnes Podraza, being then and there a woman, and did then and there choke, wound and bruise the said Agnes Podraza, with the unlawful and felonious intent on the part of him, the said Si Jones, without the consent of, and against the will of, the said Agnes Podraza, to ravish and carnally know."

Rape upon a *woman* (not a child) is the carnal knowledge of a woman without her consent, obtained by force, threats or fraud. An assault with intent to rape a *woman* is any attempt to have carnal knowledge of a woman without her consent, by force, threats or fraud; or an assault with intent to rape is constituted by the use of any threatening gesture, showing in itself, or by words accompanying it, an immediate intention, coupled with an ability, to have carnal knowledge of a woman, without her consent, by force, threats or fraud.

In an indictment for an assault to rape, the pleader would do well, prevent lengthy discussions, and save time to this court, by paying some attention to the elements entering into the composition of rape. The following precedent, we think, would be correct and perfectly safe: "That John Jones, in and upon Jane Smith, a woman, did make an assault with the intent her, the said Jane Smith, by force, threats and fraud to carnally know; against the peace," etc. We suggest that if force be the means intended, insert by force, and so with threats and fraud; the better practice here being to insert each conjunctively.

But, does this indictment allege what *means* were intended to accomplish the act? It charges that the assault was "with intent to ravish and carnally know," and in *Davis* v. *The State* it is held that the charge "did ravish" is equivalent to an allegation that the assault was with force and against the consent of the woman. (42 Texas, 226; 15 Texas Ct. App., 80.)

The scene of this supposed assault to rape was not less than a mile from any house, or any person other than the parties thereto, so far as seen or inferred by this record. The case as made by the testimony of the prosecutrix is as follows: She says she knew the

defendant. Saw him at a distance coming after or behind her, after she passed Terrell's mill. That, on the road from Navasota to her father-in-law's house, a mile from Green Moore's field, she heard footsteps behind her, and turned and saw defendant, who caught her by the heels and pulled her down, and sprang on her and seized her by the throat; that she cried out, when defendant seized her by the throat with both hands, threw her down and put his knee on her breast, and that she was choked so she thought she would die. That defendant then jumped up and went off, he going one way and she another. That defendant did not attempt to raise her clothes; that defendant did nothing more than throw her down, put his knee on her breast and choke her. These are the substantial facts, and all of the facts sworn to by the prosecutrix. There was no other witness to the transaction.

This defendant stands convicted of an assault with intent to rape. To support this conviction there must be in evidence facts, beyond a reasonable doubt, that defendant did assault Agnes Podraza, and that such assault was made with the intent by force to have *carnal knowledge* of the prosecutrix. Now if there be a fact in this record tending to show that it was the purpose of the defendant to have *carnal knowledge* of this woman, we have not been able to discover such fact. Each and every fact is consistent with the commission of an aggravated assault and battery. Indeed there is not the slightest evidence which takes the case out of the boundary or territory occupied by an aggravated assault and battery.

We are therefore of the opinion that the evidence does not justify this conviction, and that the judgment must be reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered June 17, 1885.]